## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIEL DIENA,** | **Civil Action No. 13-5902 (JAP)** |
| **Plaintiff,** | |
| **v.** | **REPORT & RECOMMENDATION** |
| **MCS CLAIM SERVICES, INC.,** | |
| **Defendant.** | |

This matter comes before the Court upon Plaintiff Daniel Diena's ("Plaintiff" or "Diena") motion seeking the entry of a default judgment against Defendant MCS Claim Services, Inc. ("Defendant" or "MCS") on his claim that MCS violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. [Docket Entry No. 5]. Diena's motion arises out of MCS's failure to appear, answer or otherwise respond to Diena's Complaint, which was filed on October 3, 2013. [Docket Entry No. 1]. In addition to seeking the entry of default judgment, via the instant motion, Diena also seeks an Order awarding statutory damages in the amount of $1,000, $400 in filing fees, $150 for service of process fees, $18.50 in FedEx fees as well as attorneys' fees in the amount of $4,475. Thus, the total damages claimed by Diena is $6043.50.

The Honorable Joel A. Pisano, U.S.D.J., referred Diena's motion for a default judgment to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court considered Diena's motion on the papers according to L.Civ.R. 78.1(b). For the reasons set forth more fully below, the Court respectfully recommends that Diena's motion seeking the entry of a default judgment against MCS be granted. The Court further recommends that damages in the amount of $5293.50 be awarded.

### I.    Background and Procedural History

As noted above, Diena filed his Complaint against MCS on October 3, 2013.  As alleged in the Complaint, MCS, "on behalf of a third-party or itself as purchaser of the debt, began efforts to collect an alleged consumer debt from Plaintiff."  (Complt. ¶9).  MCS "began its collection efforts and campaign of communications with the Plaintiff, in or about February, 2013 by sending a letter to the Plaintiff."  (*Id.* ¶10).  MCS then sent a letter to Diena dated March 29, 2013.  (*Id.* ¶11).  This letter stated, "UNLESS WE RECEIVE YOUR CHECK IN THE ENVELOPE PROVIDED, OR HEAR FROM YOU WITHIN THIRTY (30) DAYS WE WILL RECOMMEND TO OUR CLIENT FURTHER ACTION BE TAKEN."  (*Id.* ¶12).  Diena did not contact MCS within thirty days.  Instead, "[a]pproximately sixty days later, on May 21, 2013, Plaintiff placed a telephone call to Defendant and spoke with a representative[.]"  (*Id.* ¶13).  During the call, Diena in particular questioned the representative of MCS regarding the specifics of "the 'action' that would be recommended to their client, pursuant to [MCS's] letter of March 29, 2013."  (*Id.*)  MCS's "representative responded, 'We didn't recommend anything.'"  (*Id.* ¶14).

In his Complaint, Diena alleges that MCS violated the FDCPA, 15 U.S.C. §1692e, "when it falsely and deceptively threatened in its letter dated March 29, 2013 that it would recommend further action to its client if Plaintiff did not place a check in their envelope and send it to Defendant or contact them within thirty days when approximately sixty days later, Defendant's representative expressed no knowledge of any recommendation and in fact, denied that any recommendation occurred."  (*Id.* ¶17).  Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

Diena also argues that MCS violated the FDCPA, 15 U.S.C. §1692f, "by its unfair, unconscionable and misleading representation in its letter to Plaintiff that Plaintiff had a choice of sending money to, or contacting Defendant in order to prevent Defendant from recommending some unnamed 'action' when Defendant's representative confirmed that they did not ever recommend anything." (*Id.* ¶19). Diena claims that MCS's "threat with a vague reference to 'action' was made solely to unfairly intimidate Plaintiff by implying legal action would ensue if he did not comply with their demands." (*Id.*) Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

The Docket in this matter reflects that MCS was served with the Complaint on October 16, 2013. [Docket Entry No. 3]. According to Rule 12(a)(1)(A)(i), a defendant must file a responsive pleading "within 21 days after being served with the summons and complaint." It does not appear that MCS has filed a responsive pleading to Diena's Complaint or otherwise appeared in the timeframe allowed by the Rules. Further, nothing indicates that MCS sought an extension of time to answer. On February 6, 2014, Diena requested that the Clerk of the Court enter default against MCS based on its failure to respond to the Complaint. [Docket Entry No. 4]. The Clerk of the Court entered default on February 7, 2014. On February 13, 2014, Diena filed the instant motion for default judgment. [Docket Entry No. 5]. Included with the motion was an Affidavit of Service, indicating that the motion had been served on MCS. [Docket Entry No. 5-5].

## II.     Discussion

### A.  Legal Standard for Entry of Default

Rule 55 governs the entry of default and default judgment. Before default judgment can be entered, a plaintiff must first obtain an entry of default from the Clerk of the Court, as Diena

has done so here.  *See* Rule 55(a).  Where a plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, a request for default judgment must be made to the court. Rule 55(b)(2).  Whether to grant a motion for default judgment is committed to the Court's discretion.  *Tozer v. Chars A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951).

Before entering default judgment, the Court must first determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible.  *DirecTV, Inc. v. Asher,* 03-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)). "A defendant is deemed to have admitted the factual allegations of the Complaint by virtue of his default, except those factual allegations related to the amount of damages."  *Id.* (citing Wright, Miller, Kane, 10A Federal Practice and Procedure § 2688, 58-59).  The Court, however, need not accept the moving party's legal conclusions "'since a party in default does not admit mere conclusions of law.'"  *Id.* (quoting Wright, Miller, Kane, 10A Federal Practice and Procedure § 2688, at 63).  Assuming a legitimate cause of action exists, the Court examines the following three factors in determining whether a default judgment should be entered:  "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  *U.S. Small Business Admin. v. Azarel Inc.*, Civ. No. 14-888 (KM)(MAH), 2014 WL 4211269, at *4 (D.N.J. Aug. 25, 2014) (citing *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### B.  Analysis

Accepting the factual allegations as true, the Court finds that Diena has stated a claim under the FDCPA.  The FDCPA, 15 U.S.C. § 1692, *et seq.*, regulates debt collection practices.

4

In order for the provisions of the FDCPA to apply, the alleged violations must have been undertaken in furtherance of a defendant's efforts to collect a debt. A "debt collector" is defined in § 1692a(6) as "any person who uses any instrumentality of interstate commerce or the means in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." In addition, a "debt" is defined in § 1692a(5) as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." The term consumer is defined in § 1692a(3) to mean "any natural person obligated or allegedly obligated to pay any debt." Here, Diena alleges that he is a consumer and that MCS is a debt collector that "began efforts to collect an alleged consumer debt" from him. (Cmplt. ¶¶ 9, 4-5). As such, Diena has satisfied the threshold requirement of establishing that the FDCPA applies to his claims.

Among the FDCPA's restrictions are prohibitions against debt collectors using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e) as well as against using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. While Diena, in his Complaint, relies generally on these provisions without referencing any specific subsections of same, which is permissible, in his motion papers, in addition to the general sections, he further specifies that MCS violated §1692e(5) through its conduct. Section 1692(e)(5) makes it a violation for a debt collector to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." Diena claims that in attempting to collect the debt he allegedly owed, MCS "violated 15 USC

§1692e (5) and 15 U.S.C. § 1692 e-preface and f-preface by threatening to undertake actions that were never intended to be taken." (Pl. Br. at 5, ¶10).

Diena offers no case law in support of his claim that MCS's act of sending the letter dated March 29, 2013, which stated, "UNLESS WE RECEIVE YOUR CHECK IN THE ENVELOPE PROVIDED, OR HEAR FROM YOU WITHIN THIRTY (30) DAYS WE WILL RECOMMEND TO OUR CLIENT FURTHER ACTION BE TAKEN," when approximately sixty days later a representative of MCS indicated that MCS didn't recommend anything, qualifies as a violation of 15 U.S.C. §§ 1692e(5), 1692e and 1692f. Nevertheless, the Court finds that the facts alleged, at a minimum support Diena's claim under §1692e(5).

As noted above, 15 U.S.C. § 1692e(5) makes it a violation for a debt collector to "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." While it does not appear that MCS ever threatened to take action that could not legally be taken, MCS has alleged facts to support a claim that MCS threatened to take action that it did not intend to take, *i.e.*, it threatened to recommend to its client that further action be taken when it never, in fact, intended to make this recommendation. This is sufficient under 15 U.S.C. § 1692e(5). *See In re Cambron*, 379 B.R. 371, 378 (M.D. Ala. 2007) (noting that "e(5) is not limited to threats of legal action specifically, but more broadly prohibits threats 'to take *any* action that . . . is not intended to be taken.") In addition, unlike in cases finding no violation § 1692e(5), here, MCS did not indicate that it "may," "might", "could," or "possibly will" recommend that further action be taken; here, MCS stated that it "will recommend." *Cf. Madura v. Lakebridge Condominium Ass'n Inc.*, 382 Fed. Appx. 862, 865 n.2 (11th Cir. 2010) (finding that statement indicating that matter *may* be referred to attorney and lien filed if payment is not made is not deceptive practice under the FDCPA). Moreover, no evidence has been presented which indicates that MCS

6

intended to make the recommendation it said it would make; instead, all evidence available indicates that MCS did not intend to take the threatened action.  *Cf. Spira v. Ashwood Financial, Inc.*, 371 F.Supp. 2d 232, 237 (E.D.N.U. 2005) (denying request for reconsideration of finding that letter that contained phrase "[i]t is our intent to pursue collection of this debt through every means available to us" did not violate 15 U.S.C. § 1692e(5) where "[d]iscovery revealed that Ashwood was considering utilizing a series of actions to collect the debt which plaintiff did not dispute she owed.")  Under these circumstances, the Court finds that Diena has stated a viable cause of action under the FDCPA, namely § 1692e(5) of same.[1]  As a result, the Court turns to the three factors set forth in *U.S. Small Business Admin.*, 2014 WL 4211269, at *4, to determine whether a default judgment should be entered.

The first factor is "whether the party subject to default has a meritorious defense[.]"  *U.S. Small Business Admin.*, 2014 WL 4211269, at *4.  "A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense."  *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 869-70 (3d Cir. 1984).  Here, MCS has not responded to Diena's Complaint. Further, there is no evidence that its conduct "was not intentional, or resulted from a bona fide error."  15 U.S.C. § 1692k(c) (stating that "[a] debt collector may not be held liable in any action brought under this title [15 USCS §§ 1692 et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.")  In addition, the Court has already determined that Diena has asserted a viable claim under the

---

[1] Because the Court has determined that a legitimate cause of action exists under 15 U.S.C. § 1692e, or more specifically, § 1692e(5), the Court finds it unnecessary to examine whether the facts alleged also state a viable claim under 15 U.S.C. § 1692f.

FDCPA.  As such, the Court finds no reason to deny the requested default judgment based upon the existence of a meritorious defense.

The second factor is "the prejudice suffered by the party seeking default[.]"  *U.S. Small Business Admin.*, 2014 WL 4211269, at *4.  As already noted, MCS has failed to respond in any fashion to Diena's Complaint.  It has likewise failed to oppose the instant motion for default judgment.  MCS's continued failure to respond to this litigation has left Diena with no other avenue by which to pursue his claims against MCS for its alleged violations of the FDCPA.  *Ford v. Consigned Debts & Collections, Inc.*, Civil No. 09-3102 (NLH)(AMD), 2010 WL 5392643, at *4 (D.N.J. Dec. 21, 2010).  As a result, the Court finds that Diena will be prejudiced if default judgment is not granted.

The third and final factor is "the culpability of the party subject to default."  *U.S. Small Business Admin.*, 2014 WL 4211269, at *4.  Conduct is considered culpable when it is undertaken "willfully or in bad faith."  *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982).  Here, MCS was served with both Diena's Complaint and his motion for default judgment.  Under these circumstances, the Court has every reason to believe that MCS is aware of the action pending against it.  Moreover "[t]here is nothing before the Court to suggest that defendant's failure to respond to plaintiff's complaint is caused by anything other than defendant's own culpability and willful negligence."  *Ford*, 2010 WL 5392643, at *4.  As such, MCS's culpability favors the entry of default judgment.

Because the Court finds that MCS does not have a meritorious defense, Diena will be prejudiced if default judgment is not granted and MCS's failure to appear in this matter is the result of its own culpable misconduct, this Court respectfully recommends that default judgment be entered in Diena's favor against MCS on his FDCPA claims pursuant to Rule 55(b)(2).

### C.  Remedies

Having determined that Diena is entitled to default judgment, the Court must next decide the amount of damages to which he is entitled.  Diena seeks an award totaling $6,043.50, including statutory damages of $1,000, filing fees of $400, service of process fees of $150, FedEx fees of $18.50 and attorneys' fees of $4,475.  To support the requested damages award, Diena relies on counsel's affirmation [Docket Entry Nos. 5-2, 5-3], case law from the Second Circuit Court of Appeals as well as from the Southern, Eastern and Western Districts of New York (Pl. Br. at 8-11), and a Report and Recommendation recently entered in this District in *Manopla v. Bryant, Hodge and Associates, LLC*, Civil Action No. 13-338(JAP), Docket Entry No. 9.

### 1.  Statutory Damages

Pursuant to 15 U.S.C. § 1692k(a)(1)&(2), a "debt collector who fails to comply with any provisions of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of . . . any actual damage" as well as statutory damages "as the court may allow, but not exceeding $1,000[.]"  Here, Diena seeks only statutory damages.

Whether statutory damages should be granted is committed to the discretion of the court. 15 U.S.C. § 1692k(a)(2)(A); *Manopla v. Bryant, Hodge and Associates, LLC*, Civil Action No. 13-338 (JAP), 2014 WL 793555, at *6 (D.N.J. Feb. 26, 2014).  As is the question of whether the full $1,000 should be allowed.  *Id*.; *Manopla*, 2014 WL 793555, at *6.  In determining what, if any, amount of statutory damages should be imposed, courts look to the nature of the violation. As the *Manopla* court concisely put it:

> If the violation is especially egregious, or if plaintiffs show that it was repeated and persistent, courts are more likely to award the full amount.  *See, e.g.*, *Crossley v. Lieberman*, 868 F.2d 566, 572- 73 (ed Cir. 1989) (affirming award of full $1000 where court found

behavior was especially egregious in implying that an elderly widow was about to lose her home because of a minor debt); *Edwards v. Niagara Credit Solutions, Inc.*, 585 F.Supp. 2d 1346, 1354 (N.D.Ga. 2008) (granting $1000 statutory damages where violation was repeated and there was evidence of a policy and practice violation). When, however, the violation is shown to be technical in nature and infrequent, courts have exercised their discretion to deny or reduce statutory damages. *See Weis v. Zwicker & Associates, P.C.*, 664 F.Supp. 2d 214, 218 (E.D.N.Y. 2009) (awarding $500 in statutory damages when noncompliance with the statute was neither intentional nor abusive); *Sweetland v. Stevens & James, Inc.*, 563 F.Supp. 2d 300, 305 (D. Me. 2008) (awarding $250 in additional or statutory damages despite the abusive nature of the calls because the calls were neither frequent nor persistent, and there was no evidence that the violations were intentional); *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864, 876 (D. N.D. 1981 (limiting statutory damages to $400 because, although the harassing calls were intentional, they were not frequent and persistent); *O'Connor v. Check Rite, Ltd.*, 973 F.Supp. 1010, 1020 (D. Colo. 1997) (denying statutory damages where contact was not shown to be frequent, persistent or intentional).

2014 WL 793555, at * 6.

Here, MCS's sole violation of the FDCPA revolves around its letter dated March 29, 2013, wherein MCS threatened "that it would recommend further action to its client if Plaintiff did not place a check in their envelope and send it to Defendant or contact them within thirty days when approximately sixty days later, Defendant's representative expressed no knowledge of any recommendation and in fact, denied that any recommendation occurred." (Complt. ¶17). Unlike in cases where the full amount of statutory damages has been awarded, here, MCS did not repeatedly violate the FDCPA and while the Court does not condone MCS's action, the Court also does not find it to be especially egregious. As a result, the Court does not believe that statutory damages in the amount of $1000 are warranted. Instead, the Court finds that statutory damages in the amount of $250 are sufficient. Consequently, the Court recommends that that penalty be assessed here.

### 2.  Attorneys' Fees and Costs

According to 15 U.S.C. § 1692k(a)(3), a "debt collector who fails to comply with any provisions of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of . . . the costs of the action, together with a reasonable attorney's fee as determined by the court."  As with other awards of damages under the FDCPA, "[a] court has broad discretion in fashioning a reasonable award of attorney's fees[.]"  *Ford*, 2010 WL 5392643, *7.

Courts calculate a prevailing party's reasonable attorney's fees using the lodestar method. *Id*.  That is, the Court multiplies "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  "The court must determine whether the attorney's hourly rate is appropriate given the attorney's 'skill, experience, and reputation.'"  *Ford*, 2010 WL 5392643, at *7 (citations omitted).  Further, it is incumbent on the prevailing party to establish with sufficient evidence, in addition to his/her own affidavits, that the requested rates accord with those predominant in the community for similar work done by attorneys with comparable qualifications.  *Id*.

In the present matter, Diena's counsel has submitted a sworn affirmation stating that he has "practiced credit and collection law in the Federal Courts since becoming licensed to practice law in New Jersey" in 2012 and that lead counsel "has practiced in the field of credit and collection for the past seventeen (17) years."  (Zelman Affirmation ¶¶ 2-3; 7; Docket Entry No. 5-2).  Counsel asserts that attorneys with his "skill, background and acumen in New York City regularly charge between $250 to over $350 per hour" and that his "ordinary hourly rate is $300 per hour[.]"  (*Id.* ¶¶3-4).  Counsel further asserts that lead counsel's "ordinary hourly rate is $400 per hour" and that attorneys with his "skill, background and acumen in New York City

regularly charge over $400 per hour." (*Id.* ¶¶8-9). Counsel has attached a detailed billing statement to his Affirmation showing that he incurred 10.45 hours or $3,135.00 in professional time and that lead counsel incurred 3.35 hours or $1,340.00 in professional time. (*Id.* ¶¶10, 12). The billing statement also shows that counsel has also advanced $568.50 for filing fees, FedEx charges and service of process costs. (*Id.* ¶13).

Based on the information provided, the Court has no reason to doubt either counsel or lead counsel's qualifications and billing rates. In reaching this conclusion, the Court notes that their rates were recently upheld in this District in the *Manopla* matter. (Civil Action No. 13-338 (JAP); Docket Entry Nos. 9 and 10). Further, a line-by-line review of counsel's billing statement shows that the two attorneys handling this case spent a combined total of 13.8 hours conducting legal research, preparing the pleading, corresponding with their client as well as a representative from MCS, and drafting the instant motion. *See Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (holding that "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request.") The Court finds no reason to question the reasonableness of the time counsel spent on this case and, instead, is satisfied that time spent is appropriate for the tasks performed.

As a result, the Court recommends that counsel be awarded $4475.00 in attorneys' fees and $568.50 in litigation costs. Thus, the Court recommends that the total amount of damages awarded, including statutory damages ($250), attorneys' fees ($4475) and costs ($568.50), be $5293.50.

### III.   Conclusion

For the reasons stated above, and for good cause shown,

**IT IS** on this 2nd day of October, 2014,

**RECOMMENDED** that Diena's motion for default judgment be GRANTED; and it is further

**RECOMMENDED** that Diena be awarded statutory damages in the amount of $250; and it is further

**RECOMMENDED** that the request for attorneys' fees and costs be granted in its entirety in the amount of $5043.50; and it is further

**RECOMMENDED** that damages in the total amount of $5293.50 be awarded; and it is further

**ORDERED** that the Clerk of the Court send a copy of this Report and Recommendation to MCS at the following address by Regular and Certified Mail, Return Receipt Requested:

> MCS Claim Services, Inc.
> 123 Frost Street
> Woodbury, New York 11590

and it is further

**ORDERED** that the Clerk of the Court activate this Report and Recommendation and terminate the aforementioned motion [Docket Entry No. 5] accordingly.

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
